In re Brian K. STEPP, Debtor.

Madelon J. Curtis, Plaintiff,

v.

Brian K. Stepp, Defendant.

Bankruptcy No. 99–19535–B.
Adversary No. 00–1076.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

June 19, 2001.

**550**

Morris H. Laatsch, Akron, OH, for plaintiff.

Martin Baker, Cleveland, OH, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Madelon J. Curtis (Curtis), a judgment creditor of Brian K. Stepp (the Debtor), objects to the Debtor's receipt of a general discharge in bankruptcy, in addition to the discharge of her judgment debt. Specific relief is sought under §§ 523(a)(2), (4) and (6) and 727(a)(4) of the Bankruptcy Code [11 U.S.C. §§ 523(a)(2)(4) and (6) and 727(a)(4)].[1]

The Debtor and Curtis entered into a contract on March 31, 1995 wherein the Debtor was to demolish and rebuild a portion of a residential property (the Residence) co-owned by Curtis and her daughter in Twinsburg Township, Ohio. The contract was prepared and submitted to Curtis by East Coast Home Improvement, Inc. (ECHI), a home improvement company wholly owned by the Debtor.

*The Contract*

The contract in issue is one for services. It is clear from the evidence adduced and the parties' respective signatures, thereon (Exh. 1) that they intended to be contractually bound. Thereunder, the Debtor engaged to provide both demolition and reconstruction services to the Residence. The job was to be completed within ninety-five (95) days. (Plaintiff, Direct).

Upon execution of the contract, the Debtor completed the demolition work and commenced rebuilding the necessary foundational support. The completion of Stage One of the contract is disputed. Subsequently, both parties found reasons to abort their agreement. Debtor terminated his performance once the Plaintiff refused to agree to pay for additional work the Debtor believed was necessary to complete the reconstruction work. This included block work, beam work and a room addition due to decayed wood. (Stepp, Cross–Exam.) Plaintiff removed the Debtor from the job for several stated reasons: (1) Debtor failed to perform all of the Stage One work, although she fully paid him for it (Exh. P–3) (i.e., failed to demolish the house down to its footers; omitted the removal of the sheathing; and left much debris on the premises); (2) Outside of the agreed upon contract addendum costs (Exh. P–2) of $3,750.00, she alleges she was not informed of the need for additional costs at the time the addendum was

---

1. Curtis obtained a state court judgment against the Debtor in the amount of $34,406.00, plus pre-judgment interest on the sum of $16,375.00. *Curtis v. Stepp*, Case No. CV99–05–2021, *Summit County Court of Common Pleas*, August 31, 1999. Plaintiff's trial brief makes no reference to relief under § 523(a)(4) or § 727(a)(4). Apparently, relief under those Code sections is no longer being pursued.

executed; (3) Plaintiff's general dissatisfaction with Debtor's numerous delays on the job site (Exhs. P–5, 6 and 10) which eventually resulted in her formal complaint to the Better Business Bureau (Exhs. P. 26 and 27). As late as December, 1995, it is unrefuted that Debtor informed Curtis that the framing work would begin forthwith, although the contract was executed earlier on March 31, 1995 (Plaintiff, Direct); (4) General frustration resulting from several failed attempts to get return calls from the Debtor; (5) Lastly, Debtor's failure to provide Plaintiff with a copy of the project's architectural drawings for which she paid $500.00.

The work to be performed by ECHI under the contract was structured in four (4) stages (Exh. P–1):

Stage I—Demolition ($12,125.00)

Stage II—Rough Construction—Main House and Garage ($12,625.00)

Stage III—Windows/Mechanical ($12,625.00)

Stage IV—Siding/Gutters—Finish Interior ($13,075.00)

The Debtor commenced work on the house in December of 1995. Upon completion of the demolition, Debtor informed Curtis of the need to demolish another bedroom due to weathered wood and the need to rebuild the foundation to a uniform grade. An addendum to the contract was executed by both parties to address the additional work and attendant costs. Curtis expressed, in writing, her disappointment with the Debtor's performance on the job and further reported her discontent to the Better Business Bureau. Upon advice of her legal counsel, Curtis notified the Debtor of her termination of the contract. It is disputed between the parties whether the Debtor completed all of the work contracted for under Stage I of the contract. It is undisputed, however, that the Plaintiff fully paid to the Debtor all charges invoiced under Stage I, as well as all contract addendum costs.

The Debtor contends that he was paid in full for all of the Stage I work, but only after he had completed all aspects of the job under Stage I. He further asserts that he stopped performance on the contract only after Curtis refused to pay for additional Stage I work he felt was necessary for a proper reconstruction of the demolished home. Upon Debtor's filing for voluntary relief under Chapter 7 of the Bankruptcy Code, this proceeding ensued.

Curtis contends that the Debtor: (1) was paid a total of $16,375.00 for partial performance under the contract which was provided in an unworkmanlike manner; (2) her payment of the monies to Debtor resulted from deceptive practices perpetuated by the Debtor; (3) the Debtor's conduct in executing the contract with Curtis and implementing its terms constituted willful and malicious injury; (4) Debtor's conduct, as an officer of ECHI, constituted fraud or defalcation, while acting in a fiduciary capacity; and (5) Debtor's conduct constituted larceny under § 523(a)(4) of the Bankruptcy Code.

The Court must determine whether the Debtor's conduct under the contract provides any basis for finding an obligation owed to Curtis is nondischargeable. Additionally, the Court must determine whether the Debtor's alleged conduct would deny him a discharge under § 727(a)(4) of the code.

Although the contract was prepared and submitted to Curtis by the Debtor on ECHI's letterhead, it is interesting to note that the Debtor executed the contract with the Plaintiff in his individual capacity, as opposed to a representative capacity on behalf of ECHI.

*Applicable Law*

■ Under § 523(a)(2)(A) of the Bankruptcy Code, a discharge under § 727 of Title 11, United States Code, does not discharge an individual debtor from any debt—

(2) for money, property, services ... to the extent obtained

by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Herein, the Debtor held himself out as being qualified and authorized to perform the work he contracted to do for Curtis. He acknowledged, however, that the subject job was larger than usual for him (Debtor, Cross–Exam.). Although he testified that he obtained a demolition permit, but not a building permit for the job (Debtor, Direct) the more credible testimony of the permit issuance authorities revealed that he neither applied for or received either permit. Clearly, Curtis relied upon his expertise and ability to perform the job for which she contracted. Thusly, not only did the Debtor walk away from the subject job, he never acquired the proper authorization to commence the job in the first place. Moreover, a portion of the reconstruction work he performed had to be redone by another contractor procured by Curtis to complete the same work she earlier contracted with the Debtor. (Sounik, D., Direct).

Where one holds himself out as being capable of performing on a service contract, said contracting party inherently represents that he has or will have the requisite authorization to perform under the contract.

The requisite authority which would allow the Debtor to do the work under the contract emanates from the appropriate governmental agencies which are empowered to issue demolition and building permits. It is undisputed that the Village of Twinsburg was the proper issuing agency for the demolition permit, while the Summit County Building Inspection Department is the proper issuing authority for building permits for the area in which the Plaintiff's property is located.

The Debtor obtained neither a demolition or building permit prior to engaging the contract work. Plaintiff testified, unrefutedly, that the Debtor told her he had all of the required permits on file in his office. Her request of Debtor for copies of the permits were unsuccessful. (Plaintiff, Direct). Testimony provided by officials from both permit issuing authorities revealed that the Debtor failed to obtain either a demolition permit or a building permit for Curtis' project. (Kanieski, A., Direct; Miller, R., Direct). Indeed, both officials testified that no permit was issued in the name of ECHI or the Debtor in 1994, 1995, or at any time for Curtis' project.

Informing Curtis that he possessed the required permits when, in fact, he did not, constituted a false representation. The fact that he partially performed on the contract, does not absolve the false representation. Neither does the fact that Curtis paid for the Stage One work exonerate the Debtor's improper conduct. This finding is only extenuated where the Debtor commenced the work, without the required permits, and performed in an unworkmanlike manner. Inasmuch as there, effectively, was a mutual recision of the contract between Curtis and the Debtor, equity dictates that the full amount of the default judgment taken against the Debtor not be rendered nondischargeable. Thusly, an amount of $25,000.00 is hereby determined nondischargeable pursuant to § 523(a)(2)(A) of the Code. Having so de-

termined, an addressment of the statutory provisions of § 523(a)(4) and (6) is unwarranted. To the extent an addressment of § 523(a)(4) and (6) relief may be deemed warranted, Curtis failed to demonstrate sufficient proof to establish a basis for nondischargeability on those grounds.

■ Section 727(a)(4) is an alleged basis for denying the Debtor a general discharge. Under § 727(a)(4), a general discharge is to be denied where:

[T]he debtor knowingly and fraudulently, in or in connection with the case—

(A) Made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, for acting or forbearing to act. . . . 11 U.S.C. § 727(a)(4)(A–C).

The Debtor acknowledged that he is indebted to Curtis. His petition schedules show that Curtis was scheduled as a general unsecured creditor in the amount of $13,000.00. Said dollar amount was not listed as being in dispute and is referable to a "1996 contract". The state court judgment award against the Debtor and in favor of Curtis, however, shows a judgment debt of $34,406.00, at a ten percent pre-judgment rate of interest per annum. That judgment was never appealed by the Debtor. Nor did he seek reconsideration of the judgment entered by the state court. Thusly, the Debtor knowingly and deliberately made a false account with regard to the judgment debt awarded to Curtis where he misstated the debt owed to her.

It is well established that bankruptcy relief is for the honest, but financially distressed, debtor. *In re Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Herein, the Debtor's conduct failed woefully short of that standard where he knowingly misstated the amount of his obligation to Curtis. At no time has the Debtor sought to amend his petition schedules to reflect the accurate debt amount owed to Curtis. Thusly, said conduct is proscribed by § 724(a)(4)(A) of the Code to warrant the denial of a general discharge. Notwithstanding, however, that particular sanction under § 724(a)(4) will not be imposed on the Debtor in the instant case based upon the totality of circumstances evinced from the record.

### Conclusion

Accordingly, judgment is hereby rendered in favor of the Plaintiff, Madelon J. Curtis, with $25,000.00 of the subject debt found to be nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code. Each party is to bear its respective costs.

IT IS SO ORDERED.